**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BURAK OKSAYAN, JACK KESSLER, ANDREW ST. GEORGE, BRADFORD SCHLOSSER, ANDREW KARZ, JAMI KANDEL, CHASE TAYLOR, HUSSEIN SAAB, and OLUMUYIWA OLANIYAN individually, and/or on behalf of all others similarly situated, | Case No. 3:24-cv-00888-LB |
| | <u>CLASS ACTION</u> |
| | Assigned to Magistrate Judge Laurel Beeler |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |
| v. | |
| MATCHGROUP, INC. | <u>Hearing Information</u><br>Date: November 14, 2024<br>Time: 9:30 a.m.<br>Ctrm: B, 5th Floor |
| Defendant. | |

   Plaintiffs Burak Oksayan, Jack Kessler, Andrew St. George, Bradford Schlosser, Andrew Karz, Jami Kandel, Chase Taylor, Hussein Saab, and Olumuyiwa Olaniyan, individually and on behalf of all others similarly situated, submit this memorandum in opposition to Defendant Match Group Inc.'s Motion to Compel Arbitration and Stay Proceedings ("Mot.," Dkt. 30).

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ...................................................................................... 1

II.    FACTUAL BACKGROUND ...................................................................... 2

    A.    Plaintiffs Seek Public Injunctive Relief To Stop Match's Deceptive Practices ......... 2

    B.    Match Obscures Arbitration Provisions to Strip Users of Their Legal Rights .......... 4

    C.    The Arbitration Provisions' Key Terms ................................................. 5

III.    LEGAL STANDARD ............................................................................... 5

IV.    ARGUMENT ........................................................................................... 7

    A.    This Court May Determine the Scope of the Arbitration Provisions .......... 7

    B.    This Case Cannot Be Compelled to Arbitration Because Plaintiffs Seek Public Injunctive Relief ........................................ 7

        i.    Match's Class Action Waiver Seeks to Bar Representative Actions for Public Injunctive Relief and is Therefore Unenforceable .......... 8

        ii.    Match's Arbitration Provisions Violate *McGill* ......................... 9

    C.    Match's Arbitration Provisions Are Procedurally And Substantively Unconscionable ........................................ 10

        i.    The Arbitration Provisions Are Procedurally Unconscionable ................... 11

        ii.    The Arbitration Provisions Are Substantively Unconscionable ................... 15

        iii.    The Unconscionable Arbitration Provision Cannot Be Cured Via Severance ........................................ 17

V.    CONCLUSION ........................................................................................ 18

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

# <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                    <u>**Page No.**</u>

*Acorn v. Household Int'l, Inc.*,
 211 F. Supp. 2d 1160 (N.D. Cal. 2002)........................................................15, 16

*AIU Ins. Co. v. Superior Court*,
 51 Cal. 3d 807 (1990)...............................................................................13

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
 24 Cal. 4th 83 (2000).................................................................. 11, 15, 17

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011)..............................................................................5, 6

*Berman v. Freedom Fin. Network, LLC*,
 30 F.4th 849 (9th Cir. 2022) ....................................................................14

*Blair v. Rent-A-Center, Inc.*,
 928 F.3d 819 (9th Cir. 2019) .....................................................................8

*Broughton v. Cigna Healthplans*,
 21 Cal. 4th 1066 (1999)..........................................................................8, 9

*Chavarria v. Ralphs Grocery Co.*,
 733 F.3d 916 (9th Cir. 2013)....................................................................11

*Circuit City v. Adams*,
 279 F.3d 889 (9th Cir. 2002)....................................................................15

*Cruz v. PacifiCare Health Sys., Inc.*,
 30 Cal. 4th 303 (2003).............................................................................9

*Doctor's Ass'n v. Casarotto*,
 517 U.S. 681 (1996) ....................................................................... 6, 10, 11

*First Options of Chicago, Inc. v. Kaplan*,
 514 U.S. 938 (1995) ...............................................................................6

*Gentry v. Super. Ct.*,
 42 Cal. 4th 443 (2007)...........................................................................12

*Harris v. Tap Worldwide, LLC*,
 248 Cal. App. 4th 373 (2016) ..................................................................13

*Kilgore v. KeyBank, Nat'l Ass'n*,
 718 F.3d 1052 (9th Cir. 2013)..............................................................10, 11

*Knutson v. Sirius XM Radio Inc.*,
 771 F.3d 559 (9th Cir. 2014).....................................................................6

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND
STAY PROCEEDINGS

*MacClelland v. Cellco P'ship*,
   No. 21-cv-08592-EMC,
   2022 WL 2390997 (N.D. Cal. July 1, 2022)...................................................10

*Marron v. Healthsource Global Staffing, Inc.*,
   No. 19-cv-01534-KAW,
   2019 U.S. Dist. LEXIS 157095 (N.D. Cal. Sept. 13, 2019) ...........................14

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017)...................................................................................*passim*

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ..............................................................................................6

*Moua v. Optum Servs.*,
   320 F. Supp. 3d 1109 (C.D. Cal. 2018) ...............................................................13

*Nagrampa v. MailCoups, Inc.*,
   469 F.3d 1257 (9th Cir. 2006) .............................................................................12

*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*,
   22 Cal. App. 5th 1096 (2018) ...............................................................................7

*Nguyen v. Barnes & Noble, Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ...............................................................................6

*Nyulassy v. Lockheed Martin Corp.*,
   120 Cal. App. 4th 1267 (2004) .............................................................................17

*Pokorny v. Quixtar, Inc.*,
   601 F.3d 987 (9th Cir. 2010).........................................................................12, 15

*Preston v. Ferrer*,
   552 U.S. 346 (2008) ..............................................................................................6

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S 63 (2010)..................................................................................................7

*Rivera v. Uniqlo Cal.*,
   LA CV17-02848 JAK (JPRx),
   2017 U.S. Dist. LEXIS 228940 (C.D. Cal. Sept. 8, 2017) ...............................14

*Stanfield v. Tawkify, Inc.*,
   517 F. Supp. 3d 1002 (N.D. Cal. 2021) ...............................................................12

*Stirlen v. Supercuts, Inc.*,
   51 Cal. App. 4th 1519 (1997) ...............................................................................15

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ..............................................................................................6

*Stout v. GrubHub Inc.*,
   No. 21-cv-04745-EMC,
   2021 U.S. Dist. LEXIS 232378 (N.D. Cal. Dec. 3, 2021) ..............................9, 18

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

*Szetela v. Discover Bank,*
  97 Cal. App. 4th 1094 (2002) ............................................................................15, 16

*Ting v. AT&T,*
  319 F.3d 1126 (9th Cir. 2003) ............................................................................12, 16

*Volt Info. Sciences, Inc. v. Bd of Trustees of Leland Standford Junior University,*
  489 U.S. 468 (1989) .................................................................................................5

**State Statutes**

California Civil Code § 3513 .......................................................................................8

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

# I.   **INTRODUCTION**

This case centers on Defendant Match Group, Inc.'s ("Match") deliberate and widespread use of deceptive practices across its popular online dating platforms—Tinder, Hinge, and The League (collectively, the "Platforms"). Match promises the Platforms are designed to foster real-life connections and meaningful relationships. But the truth is Match intentionally designed the Platforms to foster addiction and trap users in a cycle of continuous engagement and in-app purchases, while failing to disclose the risk of compulsive use and instead affirmatively promising the Platforms were "designed to be deleted." Plaintiffs were misled by these deceptive practices and seek to represent thousands of similarly situated consumers, as well as public injunctive relief, to halt the unlawful practices purposely misleading consumers into compulsive use that has been recognized as contributing to the loneliness epidemic in the United States among other societal harms.

Match has moved to compel arbitration by relying on unenforceable arbitration provisions embedded within its Platforms' Terms of Use. The Court should deny Match's motion for two primary reasons.

First, Match's arbitration provisions violate California's *McGill* rule by unlawfully attempting to strip users of their right to seek public injunctive relief either through a class action or representative relief. This deprives Match users from challenging its harmful practices on behalf of the public and overlooks *McGill*, which makes clear that any contract that seeks to waive the right to public injunctive relief under California's consumer protection laws is unenforceable. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 956 (2017). Match sidesteps this issue entirely, effectively conceding that its arbitration provisions are unlawful under California law.

Second, the arbitration provisions are procedurally and substantively unconscionable. They are one-sided and leverage Match's superior bargaining power to deprive consumers of meaningful legal recourse. The provisions impose confusing and restrictive opt-out provisions that are nearly impossible for the average user to navigate and are otherwise illusory. The provisions are also riddled with unfair terms that place disproportionate burdens on consumers, such as prohibiting

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

class actions to deny users the ability to pool their resources and challenge Match's unlawful practices collectively—an essential mechanism in cases involving systemic corporate misconduct.

Match's arbitration provisions are unlawful, unconscionable, and unenforceable. Plaintiffs therefore respectfully request that the Court deny Match's motion to compel arbitration and allow this case to proceed in this judicial forum where the rights of all consumers can be fairly adjudicated.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs Seek Public Injunctive Relief To Stop Match's Deceptive Practices

Match characterizes its customers' allegations as "baseless," "groundless," and "absurd," but those opinions do not change the core facts, detailed in the First Amended Complaint. First, Match's Platforms are addictive, as confirmed by studies, consumer complaints, and other evidence. *See* Dkt. 29 (First Amended Complaint) ¶¶ 10-12; *id.* ¶ 10: 90% of singles believe they are addicted to dating apps, with nearly half checking them before bed and 39% checking them first thing in the morning; *id.* ¶ 11: users spend over 10 hours per week on dating apps, with men averaging 85 minutes per day and women averaging 79 minutes. Moreover, Match's Platforms contribute to the loneliness epidemic in the U.S. by fostering compulsive use and isolation, leading to "upward social comparisons, decreased self-esteem, and loneliness." *Id.* ¶ 13. Former U.S. Surgeon General, Dr. Vivek Murthy, has specifically identified technology platforms like those operated by Match as playing a "significant role" in the loneliness epidemic. *Id.* ¶ 14. Match intentionally designed its apps this way, with Tinder's CEO admitting publicly that the platform's key features are based on psychological experiments *designed to addict. Id.* ¶ 52; *id* ¶ 6 ("[Match] employs recognized dopamine-manipulating product features to gamify the Platforms and transform users into gamblers"). The complaint details the specific features, including algorithms that drive compulsive use, bottlenecks that encourage paid subscriptions, and reward structures designed to promote addiction. *Id.* ¶¶ 9, 12. Yet, despite this, Match falsely claims that its apps are "designed to be deleted." *Id.* ¶ 5 ("Hinge's marketing promise brazenly claims the app was 'Designed to be Deleted.'").

An app designed to foster addiction, keeping users engaged and making continuous purchases as part of Match's business model, is not "designed to be deleted." This deceptive

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway, Malibu, CA 90265   |   P: (213) 788-4050   F: (213) 788-4070   |   clarksonlawfirm.com

advertising is actionable under consumer protection laws. *See id.* ¶ 15 ("explaining how Match falsely markets its platforms as tools for building relationships while hiding the platforms' addictive design). Given the risk of addiction, Match had a legal duty to warn users about the dangers of compulsive use. Instead, it omits any such warnings (*id.* ¶ 17) ("Match continues to knowingly market an unreasonably dangerous product while failing to warn the public of the risks of addiction and compulsive use") and doubles down by using features that encourage compulsive behavior (*id.* ¶¶ 6, 9) (describing how Match "preys on users' fear of missing out" and uses "dopamine-manipulating product features") and penalizes time away from the Platforms (*id.* ¶ 6) (explaining how Match uses "artificial bottlenecks" to force users into paying for continuous engagement). Match's false promise that the apps are "designed to be deleted" lulls users into a false sense of security, obscuring the real risks of addiction. As a result, hundreds of thousands of users have unknowingly become addicted (*id.* ¶ 12) ("Addiction itself is a physical manifestation of Plaintiffs' injury"), trapped in a "pay-to-play" cycle that has harmed them (*id.* ¶ 2) and the public by contributing to loneliness, despair, and other societal issues (*id.* ¶ 13) ("upward social comparisons, decreased self-esteem, dissatisfaction with current relationships, and feelings of loneliness and depression"), all while Match continues to record profits and falsely advertise the Platforms as something they are not (*id.* ¶¶ 6, 7) (Match's business model depends on addiction-driven profits and its misrepresentation of the Platforms' design).

Like other actions proceeding against large technology and social media companies for purposefully addictive design, this is an important issue of great public interest. It is uniquely egregious here given Match is manipulating human emotions related to love and companionship and affirmatively promising what it purposely sets out *not* to deliver, leaving the public to think they are the "problem" when they find themselves endlessly swiping in the app, to great financial and psychological harm, unable to delete the app that Match promises, falsely, is designed to be deleted (*see id.* ¶¶ 5, 16, 17) (detailing Match's manipulation of users through false promises, emotional exploitation, and failure to warn). For these reasons, Plaintiffs seek public injunctive relief to halt Match's false advertising and compel adequate product use warnings. *Id.* ¶ 19. Notably, Match sidesteps this critical request for public injunctive relief, despite its prominence in the First

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlaw.firm.com

Amended Complaint, perhaps because it knows this claim cannot be forced into arbitration but must instead be heard in a public courtroom where the need for accountability and real change can be exposed.

**B.      Match Obscures Arbitration Provisions to Strip Users of Their Legal Rights**

Match's efforts to enforce its arbitration provisions is a calculated strategy to erode and undermine consumers' statutory rights and a transparent attempt to shield itself from any accountability. Match claims that users agreed to its Terms of Use ("TOU"), including its arbitration provisions, when creating an account. Dkt. 30-1 ¶ 5; Dkt. 30-23 ¶¶ 6-7; Dkt. 30-42 ¶ 5. However, these purported agreements were hidden behind a small-font hyperlink, offering no clear notice. *See* Dkt. 30-9; Dkt. 30-24; Dtk. 30-43. Users were simply prompted to tap a button to proceed, with no confirmation that they had viewed or understood the terms—terms that included waiving key rights, such as the ability to seek public injunctive relief. *Id.*

Plaintiffs created accounts and purchased features, falsely believing the Platforms were designed to foster meaningful off-app relationships and without knowledge that the Platforms were instead designed to foster addiction and perpetual compulsive use. Plaintiffs also had no clear notice that they were purportedly waiving key legal rights such as public injunctive relief or the ability to participate in class actions. Dkt. 29 ¶ 23 (Plaintiff Oksayan purchased a Tinder Gold monthly membership in September 2023 and a Tinder Platinum weekly membership in November 2023); *id.* ¶ 24 (Plaintiff Kessler subscribed to Hinge and various tiers of Tinder between February and November 2023); *id.* ¶ 25 (Plaintiff St. George purchased several "roses" through Hinge between September 2022 and May 2023); *id.* ¶¶ 26, 27 (Plaintiffs Kandel and Schlosser subscribed to Tinder, Hinge, and The League, making various purchases on the Platforms in 2022 and 2023); *id.* ¶ 28 (Plaintiff Karz subscribed to Tinder Premium in January 2023 and upgraded to a higher-tier subscription in February 2023); *id.* ¶ 29 (Plaintiff Taylor subscribed to Hinge and Tinder, making multiple in-app purchases between April and September 2023); *id.* ¶ 30 (Plaintiff Saab subscribed to Hinge Preferred and Tinder Plus, purchasing multiple boosts and roses on Hinge in 2020 and 2022); *id.* ¶ 31 (Plaintiff Olaniyan subscribed to both Tinder and Hinge, including a Tinder Platinum Yearly Subscription in 2023 and Hinge Quarterly and X Subscriptions in 2023 and 2024). Plaintiffs

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

were misled by Match's deceptive marketing and were not clearly informed that they were waiving their rights to pursue public injunctive relief or participate in class actions—key protections under California's consumer protection laws. *Id.* ¶¶ 23-31.

### C. The Arbitration Provisions' Key Terms

The Terms of Use for Tinder, Hinge, and The League contain stringent arbitration provisions that silence users and limit their ability to pursue collective legal actions. Tinder's and Hinge's arbitration provisions explicitly waive users' rights to file or participate in class actions or seek relief on a class basis by stating that no claims can be arbitrated or litigated on a class, collective, or representative basis. Dkt. 30-4 at 27; Dkt. 30-24 at 25-26. Similarly, The League's terms provide that claims may only be brought individually, effectively barring class actions. Dkt. 30-45 § 14.6.

All three Platforms mandate binding individual arbitration for any disputes related to the terms, with clauses reinforcing that users waive their rights to a jury trial or class action participation. Dkt. 30-4 at 25; Dkt. 30-24 at 26; Dkt. 30-45 § 14.1. Additionally, these provisions include severability clauses, meaning that if the class action waivers are found unenforceable, the entire arbitration provisions become null and void, allowing claims to proceed in court. Dkt. 30-4 at 27; Dkt. 30-24 at 26; Dkt. 30-45 § 14.8.1.1.

### III. <u>LEGAL STANDARD</u>

All three Platforms mandate binding individual arbitration for any disputes related to the terms, with clauses reinforcing that users waive their rights to a jury trial or class action participation. Dkt. 30-4 at 25; Dkt. 30-24 at 26; Dkt. 30-45 § 14.1. Additionally, these provisions include severability clauses, meaning that if the class action waivers are found unenforceable, the entire arbitration provisions become null and void, allowing claims to proceed in court. Dkt. 30-4 at 27; Dkt. 30-24 at 26; Dkt. 30-45 § 1"The 'principle purpose' of the [Federal Arbitration Act ("FAA")] is to 'ensur[e] that private arbitration agreements are enforceable according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citing *Volt Info. Sciences, Inc. v. Bd of Trustees of Leland Standford Junior University*, 489 U.S. 468, 489 (1989)).

> Section 2 [of the FAA] makes arbitration agreements 'valid, irrevocable, enforceable' as written (subject, of course, to the saving clause) . . . and § 4 requires courts to compel arbitration 'in accordance with the terms of the

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 | F: (213) 788-4070 | clarksonlawfirm.com

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 | F: (213) 788-4070 | clarksonlaw.firm.com

agreement' upon the motion of either party to the agreement (assuming that the 'making of the arbitration agreement or the failure . . . to perform the same' is not at issue). In light of these provisions, we have held that parties may agree to limit the issues subject to arbitration . . . to arbitrate according to specific rules . . . and to limit with whom a party will arbitrate its disputes.

*Concepcion*, 563 U.S. at 344. (emphasis added) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) and *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)). The "FAA requires that an agreement to arbitrate be enforced unless a party successfully challenges the formation of the arbitration agreement." *Concepcion*, 563 U.S. at 353 (Thomas, J., concurring). "Arbitration agreements may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 364 (quoting *Doctor's Ass'n v. Casarotto*, 517 U.S. 681, 687 (1996)). "[T]he party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

In determining whether a valid arbitration agreement exists, courts apply ordinary state law principles that govern the formation of contracts. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). These contract law principles fall within the savings clause because they apply to arbitration agreements and other contracts as they do not "take [their] meaning precisely from the fact that a contract to arbitrate is at issue," but are "generally applicable contract defenses." *Doctor's Ass'n*, 517 U.S. at 685, 687. Nor do they "stand as an obstacle to the accomplishment of the FAA's objectives." *Concepcion*, 563 U.S. at 334. Rather, they prevent enforcement of an agreement to arbitration only in the limited set of cases where enforcement of the agreement would result in a waiver of substantive rights, and the FAA's objectives do not include requiring a party to relinquish any "substantive right . . . [state] law may afford." *Preston v. Ferrer*, 552 U.S. 346, 359 (2008).

//

//

//

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 | F: (213) 788-4070 | clarksonlawfirm.com

## IV. ARGUMENT

### A. This Court May Determine the Scope of the Arbitration Provisions

Match relies on the delegation provisions in the Platforms' TOU to argue that the arbitrability of this case should be decided by an arbitrator. *See* Dkt. 30 at 23:21-24:4. This Court should reject that position because the delegation provisions are unenforceable. Delegation clauses are analyzed as agreements separate from the arbitration agreement in which they often reside, per the "severability" principle. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S 63, 70-71 (2010). As such, challenges to the validity of the delegation clause itself are proper for a court to decide. *Id.*; *see also Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal. App. 5th 1096, 1109 (2018). While such a challenge must be directed at the delegation clause specifically, it need not be a distinct basis from the party's challenge to the arbitration clause more generally. *See Nielsen*, 22 Cal. App. 5th at 1110 (holding that plaintiff's unconscionability challenge made against the delegation clause is for the court to decide even if he makes the same challenge to the whole arbitration provision).

Match's delegation clauses are rendered unenforceable due to the "poison pill" non-severability clauses contained in the arbitration provisions. Dkt. 30-4 at 27; Dkt. 30-24 at 26; Dkt. 30-45 § 14.8. These clauses explicitly state that if the class action waiver is found invalid, the entire arbitration provisions—including the delegation clauses—are nullified. *See id*. Since the class action waiver violates California law under the *McGill* rule, as explained further below, the arbitration provisions—including the delegation clauses—are unenforceable. Therefore, the Court must resolve the validity of the delegation clauses, and with the class actions waivers invalid, the entire arbitration provision falls apart.

### B. This Case Cannot Be Compelled to Arbitration Because Plaintiffs Seek Public Injunctive Relief

Match's arbitration provisions are unenforceable because they violate California's *McGill* rule by attempting to waive consumers' right to seek public injunctive relief. Plaintiffs seek public injunctive relief to stop Match's deceptive practices, which mislead users into addictive engagement with its Platforms. *See* Dkt. 29 ¶ 19. Match's class and representative action waivers, which attempt

to bar such relief, are precisely the type of provisions that *McGill* prohibits. The Court should therefore reject Match's motion to compel arbitration and ensure that Match's harmful practices are addressed in a court of law. At minimum, the claim for public injunctive relief, on which Match's motion is silent, should proceed in this Court.

### i. Match's Class Action Waiver Seeks to Bar Representative Actions for Public Injunctive Relief and is Therefore Unenforceable

In California, an arbitration provision is invalid and unenforceable if it waives a plaintiff's statutory right to seek public injunctive relief in any forum. *McGill*, 2 Cal. 5th at 956. Any contract that bars public injunctive relief in both court and arbitration violates California Civil Code § 3513, which provides that "a law established for a public reason cannot be contravened by a private agreement." *Id.* at 946 ("Because public injunctive relief remains a remedy available to private plaintiffs under the UCL and the false advertising law, as well as under the CLRA, the arbitration provision at issue was invalid and unenforceable under state law insofar as it purported to waive the customer's statutory right to seek such relief . . . ."). Crucially, the FAA does not preclude the *McGill* rule. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 830–31 (9th Cir. 2019).

Public injunctive relief is a remedy that "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 2 Cal. 5th at 955. For example, "an injunction under the CLRA against a defendant's methods, acts, and practices" benefits the general public. *Id.* Such relief "benefits the plaintiff, 'if at all,' only "incidental[ly]' and/or as 'a member of the general public.'" *Id.* at 956 (quoting *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066, 1080 n.5 (1999)) (alterations in original).

Plaintiffs, on behalf of themselves and all other similarly situated consumers, allege that Match engaged in deceptive practices in violation of California's UCL, CLRA, and FAL. Dkt. 29 ¶¶ 116, 120. To stop Match's unlawful conduct and prevent further harm, Plaintiffs seek public injunctive relief. *Id.* ¶ 19. This is precisely the type of remedy recognized under *McGill*, where the court held that consumers have the right to seek injunctions against deceptive business practices for the benefit of the public. *McGill*, 2 Cal. 5th at 953. Indeed, *Blair* confirmed that *McGill* applies when seeking to prevent ongoing violations of the UCL and CLRA, as in this case. *See Blair*, 928

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

F.3d at 822–23 (finding that *McGill* applied when the plaintiff sought an injunction to prevent the defendant from violating the UCL and CLRA); *see also Stout*, 2021 U.S. Dist. LEXIS 232378, at *21 (finding that the plaintiff sought public injunctive relief by seeking an order enjoining defendant from continuing to engage, use, or employ its practice of misrepresenting its delivery fees). Plaintiffs' claims mirror those in *McGill* because they target Match's widespread, ongoing deception and seek to protect consumers at large. *Id.* ¶ 19 (seeking public injunctive relief to prevent Match's ongoing deception and protect the public). This type of relief is, by definition, for the benefit of the general public, as permitted under the UCL and affirmed in *Broughton* and *Cruz*, where such injunctive relief was deemed to be primarily for the public's benefit. *See McGill*, 2 Cal. 5th at 955 (citing *Broughton*, 21 Cal. 4th at 1082 and *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 315 (2003)).

### ii. Match's Arbitration Provisions Violate *McGill*

Match's class and representative action waivers improperly prohibit Plaintiffs from pursuing public injunctive relief—a remedy that is vital to protecting the public from Match's ongoing deceptive practices. Under *McGill*, "a clause in any contract—even a contract lacking an arbitration provision—that seeks to waive, in all forums, the statutory right to demand public injunctive relief under the UCL, the CLRA, or the false advertising law is void and unenforceable under California law." *McGill*, 2 Cal. 5th at 955. This principle is directly applicable to Match's arbitration provisions, which unlawfully attempt to prohibit representative proceedings by stating that users "waive the right to file or participate in a class action against the other or otherwise to seek relief on a class basis, including any currently pending actions against Tinder [or Hinge]." Dkt. 30-4 at 27; Dkt. 30-24 at 25-26. And that "YOU AND THE LEAGUE AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." Dkt. 30-45 § 14.6.

Match markets its Platforms, such as Tinder, Hinge, and The League, as tools designed to facilitate real-life interactions and help users establish meaningful relationships. *See generally* Dkt. 29. However, Plaintiffs allege that these Platforms were intentionally designed to foster addictive

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

behavior, misleading users into continuous engagement without delivering on the promised real-life connections. *See id.* This deception is not only harmful to individual users, but it also affects the broader public who are lured into using these Platforms under false pretenses. *Id.* ¶ 19.

The waivers Match seeks to enforce would effectively prevent Plaintiffs from seeking an injunction in any forum that would stop Match from continuing its unlawful and deceptive marketing practices. Dkt. 30 at 22:10–23:19. By barring representative actions, Match's waivers attempt to nullify consumers' statutory right to seek public injunctive relief—a right that is explicitly protected under California law. This is exactly the type of overreach that the *McGill* decision prohibits, and the court in *McGill* made clear that any provision attempting to waive the right to seek public injunctive relief is "void and unenforceable." *McGill*, 2 Cal. 5th at 955.

Even if the Court is inclined to consider Match's motion to compel arbitration, it should recognize that the class and representative action waiver is unenforceable under *McGill*. Consequently, the claims for public injunctive relief, which are designed to benefit the general public and prevent ongoing harm caused by Match's deceptive practices, must remain within this Court's jurisdiction. Plaintiffs have not agreed to arbitrate their claims for public injunctive relief, and therefore, those claims cannot be compelled to arbitration. This Court should thus retain jurisdiction over these critical claims to ensure that Match's unlawful conduct is addressed and stopped to protect both Plaintiffs and the broader public from further harm.

### C.    Match's Arbitration Provisions Are Procedurally And Substantively Unconscionable

Match's arbitration provisions cannot be enforced because they are both procedurally and substantively unconscionable. Under California law "a contractual provision is unenforceable if it is both procedurally and substantively unconscionable." *MacClelland v. Cellco P'ship*, No. 21-cv-08592-EMC, 2022 WL 2390997, at *4 (N.D. Cal. July 1, 2022) (quoting *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013)); *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996) ("[A]pplicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]."). Both substantive and procedural unconscionability do not have to be the same degree, "[i]n other words, the more

10

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

### i. The Arbitration Provisions Are Procedurally Unconscionable

Procedural unconscionability concerns the way a contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of "oppression" and "surprise" involved in the agreement. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). "Oppression" involves the weaker party's absence of meaningful choice and unequal bargaining power that results in no real negotiation. *Id.* A "surprise" analysis asks the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party. *Id.* Match's arbitration provisions are procedurally unconscionable because they were presented to consumers as non-negotiable contracts of adhesion in a highly coercive and manipulative context, exploiting users' emotional vulnerabilities and psychological dependence on the Platforms.

The Platforms (Tinder, Hinge, and The League) are specifically designed to create and sustain addictive behaviors in their users by compelling continuous engagement through emotionally charged mechanics. Dkt. 29 ¶¶ 6, 50-52. The constant need for validation and the pursuit of a romantic or social connection heightens users' emotional dependence on the Platforms. *See id.* ¶¶ 60-62. This psychological duress impairs users' ability to make informed, voluntary decisions, including their purported consent to arbitrate. Still, the arbitration provisions are presented during the sign-up or sign-in process at a time when users are emotionally vulnerable—focused on the prospect of finding relationships or connections, not on the legal ramifications of agreeing to terms buried in small hyperlinks. By capitalizing on consumers' emotional and psychological states, Match creates an environment where users lack a meaningful choice and are essentially coerced into accepting the terms. This environment constitutes a form of psychological duress. *See Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996) (noting that duress is a valid defense against enforcing arbitration agreements); *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (noting that duress may invalidate contracts).

//

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Beyond the emotional manipulation, Match's arbitration provisions are classic examples of oppression, as they are embedded in contracts of adhesion where Match holds vastly superior bargaining power compared to the average consumer. *See Stanfield v. Tawkify, Inc.*, 517 F. Supp. 3d 1002, 1005 (N.D. Cal. 2021) (finding that a matchmaking service had superior bargaining strength because consumers had did not have an opportunity to negotiate). Plaintiffs, like all other users, were presented with non-negotiable take-it-or-leave-it TOU, forcing them to accept Match's terms in order to proceed with the sign-up process on Platforms like Tinder, Hinge, and The League. *See Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) (finding AT&T's terms procedurally unconscionable because they were offered on a take-it-or-leave it basis); *see also Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) ("An agreement or any portion thereof is procedurally unconscionable if 'the weaker party is presented the clause and told to "take it or leave it" without the opportunity for meaningful negotiation.'"). Plaintiffs were not afforded any opportunity to negotiate, understand, or even consult with an attorney about the arbitration provisions before being compelled to accept them in order to use Match's Platforms. Such an imposition is inherently oppressive. *See Ting*, 319 F.3d at 1148; *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (finding an arbitration agreement adhesive where "the contract was non-negotiable" and plaintiff's "only choice was to sign it as written or to opt out").

The presence of an opt-out clause does not save Match's arbitration provisions from being adhesion contracts. The opt-out clause is illusory because it offers no real or meaningful opportunity for Plaintiffs to avoid arbitration. *See Gentry v. Super. Ct.*, 42 Cal. 4th 443, 472 (2007) (finding an arbitration agreement with opt-out provision procedurally unconscionable because it did not provide a "meaningful opportunity to opt out"). In this case, the opt-out mechanism provided by Match is designed in such a way that it does not afford users a realistic or practical way to exercise their right to opt out.

To begin with, the arbitration provisions in Match's TOU are illusory because Match reserves the unilateral right to modify its TOU at any time. Specifically, the Tinder and Hinge TOU provide: "We reserve the right to modify these Terms at any time." Dkt. 30-4 at 4; Dkt. 30-25 at 4. Similarly, The League's TOU assert: "[W]e reserve the right to modify, amend or change the Terms

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlaw.firm.com

at any time." Dkt. 30-45 § 16. These provisions give Match the unfettered discretion to alter the terms, including the arbitration provisions, without notice, making the entire TOU illusory. Courts have consistently held that a contract is unenforceable as illusory when one party retains the unilateral right to modify or terminate the agreement at will. *See Moua v. Optum Servs.*, 320 F. Supp. 3d 1109, 1113 (C.D. Cal. 2018) (quoting *Harris v. Tap Worldwide, LLC*, 248 Cal. App. 4th 373, 385 (2016)) ("Generally, '[a] contract is unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder.'").

Further, the opt-out clauses in Match's arbitration provisions are not just ambiguous; they are illusory because they create insurmountable barriers for consumers attempting to preserve their legal rights. The Tinder and Hinge TOU ostensibly allow users to opt out "within 30 days of the time you consent to this Agreement." Dkt. 30-4 at 36; Dkt. 30-25 at 42. However, this seemingly straightforward provision is meaningless because the sign-up process on Match's Platforms (Tinder, Hinge, The League) deliberately obfuscates when, or even if, users actually consent to the terms. *See* Dkt. 30-7–30-21. This calculated ambiguity leaves users in a perpetual state of uncertainty about their 30-day opt-out window, effectively nullifying this supposed right. *See AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990) ("[A]mbiguous language is construed against the party who caused the uncertainty to exist").

Even if a user manages to navigate this intentionally murky timeline, the opt-out clause is nothing more than a hollow gesture. It applies only retroactively, binding users to arbitration for any future claims. Dkt. 30-4 at 36; Dkt. 30-25 at 42. This renders the act of opting out virtually meaningless, as users remain ensnared in Match's arbitration net for all future disputes. This is not a fair option; it is a ploy designed to give the illusion of choice while ensuring users remain bound by Match's preferred dispute resolution method. The League's opt-out provision is even more egregious, bordering on punitive. If The League modifies its arbitration provision, users may reject the change within 30 days. Dkt. 30-45 § 14.7. However, exercising this "right" comes with a penalty: immediate account termination. *Id.* This is not an opt-out; it is an ultimatum. Users are forced to choose between accepting potentially unfavorable arbitration terms or losing access to a service they

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

have become dependent on due to its intentionally addictive design. *See* Dkt. 29 ¶ 15. Courts have consistently frowned upon such deceptive practices. *See, e.g.*, *Marron v. Healthsource Global Staffing, Inc.*, No. 19-cv-01534-KAW, 2019 U.S. Dist. LEXIS 157095, at *22 (N.D. Cal. Sept. 13, 2019) (finding opt-out provision illusory and arbitration agreement adhesive because the opt-out provision failed to explain who the plaintiff should be "personally notify[ing]" and it was unclear how an individual could ever satisfy the requirements of the opt-out provision); *see Rivera v. Uniqlo Cal.*, LA CV17-02848 JAK (JPRx), 2017 U.S. Dist. LEXIS 228940, at *24 (C.D. Cal. Sept. 8, 2017) (finding arbitration agreement procedurally unconscionable because of "limitations on the ability to understand the right to opt out" and "failing to provide a copy with the details about how to opt out").

Match's opt-out clauses are not designed to offer users a meaningful choice. Instead, they are carefully crafted to create the illusion of fairness while ensuring that users remain bound by arbitration agreements that strip away their fundamental legal rights. This Court should recognize these provisions for what they truly are: unconscionable attempts to deprive consumers of their day in court.

Lastly, Match's arbitration provisions are not presented as stand-alone documents during the sign-up process on its Platforms (Tinder, Hinge, and The League). Users, including Plaintiffs, are never required to click on the non-descript words "Terms" which fail to clearly indicate that they contain an arbitration provision. *See* Dkt. 30-7–30-21. Instead, Match's sign-up screen merely displays a brief notice that by clicking "Sign In" or similar buttons, users agree to the terms, without adequately notifying them of the existence of the arbitration provision or that they are agreeing to be bound by it. *See* Dkt. 30-7–30-21; *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857-59 (9th Cir. 2022) (finding that a webpage did not adequately call to consumer's attention the existence of the arbitration provision, or the fact that, by clicking on the "continue" button, they were agreeing to be bound by the arbitration provision even with the language "I understand and agree to the <u>Terms & Conditions</u> *which includes mandatory arbitration* and <u>Privacy Policy.</u>") (emphasis added).

//

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlaw.firm.com

This lack of clear and conspicuous notice renders the arbitration provisions procedurally unconscionable, as users were not meaningfully informed of the significant rights they were purportedly waiving.

### ii. The Arbitration Provisions Are Substantively Unconscionable

Match's arbitration provisions are substantively unconscionable because they impose overly harsh, one-sided terms that disproportionately benefit Match while unfairly limiting consumers' rights. Under California law, substantive unconscionability focuses on the terms of the agreement and whether those are "overly harsh" or "one-sided." *Armendariz*, 24 Cal. 4th at 114; *Circuit City v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002) (citing *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997)). "[M]utuality is the 'paramount' consideration when assessing substantive unconscionability." *Pokorny v. Quixtar*, 601 F.3d 987, 997–98 (9th Cir. 2010) (citations omitted). Arbitration agreements must contain at least "a modicum of bilaterality" to avoid unconscionability. *Armendariz*, 24 Cal. 4th at 117-18. In determining whether an arbitration agreement is sufficiently bilateral, courts assessing California law look beyond facial neutrality and examine the actual effects of the challenged provision. *Acorn v. Household Int'l, Inc.*, 211 F. Supp. 2d 1160, 1172 (N.D. Cal. 2002); *see Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1101 (2002) (finding a mutual prohibition on representative or class actions substantively unconscionable because credit card companies typically do not sue their customers in class action lawsuits, and thus this provision was clearly meant to prevent customers from seeking redress for relatively small amounts of money).

First, Match's arbitration provisions across its Platforms (Tinder, Hinge, and The League) are substantively unconscionable because they are grossly one-sided and lack any semblance of fairness or balance. These provisions explicitly require users to "waive the right to file or participate in a class action against [Tinder, Hinge, or The League] or otherwise to seek relief on a class basis, including any currently pending actions." Dkt. 30-4 at 27; Dkt. 30-24 at 25-26; Dkt. 30-45 § 14.6. Although presented as "mutual" class action bans, these waivers are fundamentally one-sided and thus unconscionable. In reality, Match—a large corporation—would never need to bring a class action against its own users. The asymmetry is clear: the waivers effectively strip users of their ability to pool resources and challenge Match's widespread and systemic practices collectively. This

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

lack of bilaterality is a hallmark of substantive unconscionability. *See Ting v. AT&T*, 319 F.3d 1126, 1150 (9th Cir. 2003) (citing *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1101 (2002)) (finding a mutual class action ban substantively unconscionable because it was "manifestly one-sided" and designed to prevent customers from seeking redress). Moreover, these arbitration provisions are not designed to promote fairness or mutuality but to silence users and shield Match from accountability. By forcing users into individual arbitration, Match effectively prevents them from seeking collective redress for the deceptive practices employed across its Platforms. This one-sided imposition, combined with sweeping class action waivers, renders the arbitration provisions substantively unconscionable and unenforceable under California law.

Second, even if consumers manage to find and comprehend the arbitration provisions buried deep within Match's lengthy TOU, they are met with an excessively burdensome opt-out process. Users must provide written notice within 30 days of consenting to the agreement or any changes to the terms—a nearly impossible task for the average consumer. *See* Dkt. 30-4 at 36; Dkt. 30-25 at 42; Dkt. 30-45 § 14.7. The short window, combined with the complexity of understanding the legal ramifications of opting out, is oppressive, especially for users without legal expertise. This narrow opt-out mechanism is not a meaningful opportunity to preserve their rights but an additional layer of procedural roadblocks designed to trap users into forfeiting essential rights, including participation in class actions and the right to a jury trial. The oppressive nature of this process only underscores the substantive unconscionability of Match's arbitration provisions.

Lastly, restricting the opt-out process to a single, outdated method—mail—places an unnecessary and significant burden on consumers. This requirement makes it harder for users to exercise their rights, especially in an era where digital communication is the norm. The combination of this restrictive opt-out method and the ambiguous start of the 30-day period—given that users might not even realize when they have "agreed" to the terms or that changes were made—greatly increases the likelihood that consumers will miss the deadline, effectively trapping them into the arbitration provisions. The burden of navigating this cumbersome opt-out process falls solely on the consumer, making this provision blatantly one-sided in favor of Match, the more powerful party. *See Acorn*, 211 F. Supp. 2d at 1172 (although the confidentiality provision in an arbitration

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlaw.firm.com

agreement appeared neutral, it effectively favored the defendants by reinforcing their advantages as repeat participants in arbitration, thereby concealing the outcomes and limiting the ability of consumers to scrutinize or challenge systemic issues in the arbitration process). This imbalance in burdens underscores the substantive unconscionability of the arbitration provisions, which are designed to maximize the chances that consumers will unknowingly lose their right to opt out.

### iii. The Unconscionable Arbitration Provision Cannot Be Cured Via Severance

Severance is inappropriate in this case because the arbitration provisions are permeated by multiple instances of unconscionability. A court's authority to reform an agreement is "limited to instances in which parties make mistakes, not to correct illegal provisions." *Armendariz*, 24 Cal. 4th at 125 (citation omitted). Therefore, a court "must void the entire agreement*"* when it is unable to cure unconscionability through severance or restriction and is not permitted to cure it through reformation and augmentation. *Id.* (citation omitted). There are two factors that weigh against severance of the unlawful provisions: (1) the existence of multiple defects indicating "a systematic effort to impose arbitration" on the weaker side; and (2) the lack of mutuality to such an extent "that there is no single provision a court [could] strike or restrict in order to remove the unconscionable taint from the agreement." *Id.* at 124–25.

Severance would not be appropriate here because the arbitration provisions are permeated by an unlawful purpose, given that, as described above, there are multiple instances of unconscionability, indicating a systematic effort to impose arbitration on Plaintiffs, the less powerful party in this scenario, not simply as an alternative to litigation, but as an inferior forum that works to Match's advantage. *Id.* at 124; *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1288 (2004). Furthermore, the arbitration provisions are also unconscionable because they lack any degree of mutuality, and there is no single provision that may be stricken or restricted "in order to remove the unconscionable taint," given the substantive unconscionability described above. *Armendariz*, 24 Cal. 4th at 124–25; *Nyulassy*, 120 Cal. App. 4th at 1288. Given the oppressive limitations, illusory terms, and unilateral nature, the arbitration provisions are both procedurally and substantively unconscionable, and thus, unenforceable.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

## V. __CONCLUSION__

Based on the foregoing, Plaintiffs respectfully requests the Court deny Match's motion to compel arbitration. Even if the Court were inclined to grant Match's motion in part, Plaintiffs' claims for public injunctive relief should proceed in this Court given any purported waiver of this right is unenforceable under California law. *See Stout v. GrubHub Inc.*, No. 21-cv-04745-EMC, 2021 U.S. Dist. LEXIS 232378, at *31 (N.D. Cal. Dec. 3, 2021) (denying motion to compel arbitration over claims seeking public injunctive relief).

Dated: September 11, 2024

**CLARKSON LAW FIRM, P.C.**

*/s/ Bahar Sodaify*
Ryan J. Clarkson, Esq.
Bahar Sodaify, Esq.
Alan Gudino, Esq.

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS