1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

BURAK OKSAYAN, et al.,

        Plaintiffs,

    v.

MATCHGROUP, INC.,

        Defendant.

Case No. 24-cv-00888-LB

**ORDER COMPELLING ARBITRATION**

Re: ECF No. 30

## INTRODUCTION

This is a putative class action against MatchGroup, Inc., which owns three dating platforms: Tinder, Hinge, and The League.[1] The plaintiffs — claiming violations of the laws of California, Georgia, Florida, Maryland, Michigan, Missouri, New York, and Virginia — sued on behalf of a nationwide class and state classes, claiming violations of state consumer-protection laws because Match marketed addictive products and did not warn consumers about the associated risks. Match moved to compel arbitration on the ground that its terms of use, which users must accept, require

---

[1] First Am. Compl. (FAC) – EFC No. 29 at 20–21 (¶¶ 39, 41). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

1    binding arbitration and the arbitrator to decide questions of arbitrability.[2] The court grants the

2    motion and compels arbitration.

3                                    **STATEMENT**

4    **1.   The Platforms and Terms of Use**

5         Match owns three dating platforms: Tinder, Hinge, and The League.[3] The platforms allegedly

6    have an addictive, game-like design that locks users into "a perpetual pay-to-play loop" that

7    prioritizes profits and turns users into addicts who will buy ever-more-expensive subscriptions to

8    unlock special features, all without warning them of the potential harm.[4] There are nine proposed

9    classes, all of users who bought one or more subscriptions to the platforms during the four years

10   before the filing of the lawsuit: a nationwide class and eight state classes (California, New York,

11   Georgia, Florida, Missouri, Michigan, Maryland, and Virginia).[5] The plaintiffs, who all have used

12   at least one of the platforms during the class period, claim negligence (on behalf of the nationwide

13   class) and violations of state consumer-protection laws for the state classes.[6]

14        The motion turns on whether the plaintiffs consented to the platforms' terms of use.

15        All users of the platforms must create an account and agree to the platforms' terms of use

16   before accessing the platforms' services.[7] For example, in Tinder and Hinge, a user must tap a

17   button informing them that by tapping the button and creating the account, the user agrees to the

18   terms of use. The terms of use are accessible through a conspicuous hyperlink in contrasting font

19   to the notice.[8] Most Tinder and Hinge users use the account for free, but they can buy a

20   _____

21   [2] Mot. – ECF No. 30.

     [3] FAC – ECF No. 29 at 2 (¶ 1).

22   [4] *Id.* (¶¶ 1–4).

23   [5] *Id.* at 45–46 (¶ 103).

24   [6] *Id.* at 9–18 (¶¶ 23–31), 51–85 (¶¶ 121–346).

25   [7] Flashman Decl., Ex. A to Mot. – ECF No. 30-1 at 2 (¶ 5); Greenspan Decl., Ex. B to Mot. – ECF No.
     30-23 at 2 (¶ 5); Krosnjar Decl., Ex. C to Mot. – ECF No. 30-42 at 2 (¶ 5). The court can consider
26   material outside of the pleadings when ruling on motions to compel arbitration. *Thompson v. Isagenix
     Int'l LLC*, 849 F. App'x 712, 712 (9th Cir. 2021); *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670
27   & n.1 (9th Cir. 2021) (collecting cases for the proposition that "[t]he summary judgment standard is
     appropriate" under 9 U.S.C. § 4).

28   [8] Flashman Decl., Ex. A to Mot. – ECF No. 30-1 at 2 (¶ 6); Greenspan Decl., Ex. B to Mot. – ECF No.
     30-23 at 2 (¶ 6).

United States District Court
Northern District of California

subscription, and if they do, the users must confirm their consent to the terms of use by tapping a button to continue, again with the adjacent conspicuous hyperlink to the terms of use.[9] The League users also must sign up for an account and check a box agreeing to the terms of use (with the adjacent conspicuous hyperlink). If they do not check the box acknowledging the terms of use, a "pop-up blocking modal" appears with a message in bold capital letters telling them that terms-of-use "acceptance required" to complete the account creation.[10] Tinder and Hinge users must confirm their consent to the terms of service each time they sign in, via a screen that informs them that they are consenting to terms of service in the adjacent conspicuous hyperlink.[11] Match provided examples of the screen shots showing the process, including for each named plaintiff.[12]

Users with accounts starting in 2022 to the present also encountered at least one blocking modal that required them to accept the updated terms of use before using the platforms. The users could opt out of retroactive application of the new terms of use, but they could not opt out of the arbitration agreement. No named plaintiff exercised their right to opt out.[13] If users leave the app without clicking the required button, the blocking modal reappears when they try to use the app again. In other words, they must accept the updated terms of service to use the services.[14]

All plaintiffs claim to have purchased services on at least one app within the last two years.[15] That means that they necessarily reconfirmed their acceptance of the terms of use.[16]

---

[9] Flashman Decl., Ex. A to Mot. – ECF No. 30-1 at 2–3 (¶ 8); Greenspan Decl., Ex. B to Mot. – ECF No. 30-23 at 2–3 (¶ 8).

[10] Krosnjar Decl., Ex. C to Mot. – ECF No. 30-42 at 2 (¶¶ 5–6).

[11] Flashman Decl., Ex. A to Mot. – ECF No. 30-1 at 2 (¶ 7), Greenspan Decl., Ex. B to Mot. – ECF No. 30-23 at 2 (¶ 7).

[12] Screenshots, Exs. A-6–A-7, A-10–A-11, A-13–A-15, A-17, & A-19–A-20 to Flashman Decl., ECF Nos. 30-7–30-8, 30-11–30-12, 30-14–30-16, 30-18, 30-20–30-21; Screenshots, Exs. B-6–B-7, B-11, B-15–B-16, & B-18 to Greenspan Decl. – ECF Nos. 30-29–30-30, 30-34, 30-38–30-39, 30-41; Screenshots, Ex. C-2 to Krosnjar Decl. – ECF No. 30-44.

[13] Flashman Decl., Ex. A to Mot. – ECF No. 30-1 at 3–4 (¶¶ 12–14), Greenspan Decl., Ex. B to Mot. – ECF No. 30-23 at 3–4 (¶¶ 11–13); Krosnjar Decl., Ex. C to Mot. – ECF No. 30-42 at 3–4 (¶¶ 10–14).

[14] Flashman Decl., Ex. A to Mot. – ECF No. 30-1 at 3–4 (¶¶ 12–13), Greenspan Decl., Ex. B to Mot. – ECF No. 30-23 at 3–4 (¶¶ 11–12); Krosnjar Decl., Ex. C to Mot. – ECF No. 30-42 at 3 (¶¶ 12–13).

[15] FAC – ECF No. 29 at 9–18 (¶¶ 23–31).

[16] Mot. – ECF No. 30 (drawing this inference from the fact allegations).

The platforms' terms of use starting in 2022 all have arbitration agreements. For example, the 2024 Tinder terms of use has the following:

> THESE PROVISIONS INCLUDE A MANDATORY PRE-ARBITRATION INFORMAL DISPUTE RESOLUTION PROCESS (EXCEPT FOR INDIVIDUAL CLAIMS OF SEXUAL ASSAULT OR SEXUAL HARASSMENT OCCURRING IN CONNECTION WITH YOUR USE OF THE SERVICES), AN ARBITRATION AGREEMENT, SMALL CLAIMS COURT ELECTION, CLASS ACTION WAIVER, ADDITIONAL PROCEDURES FOR MASS ARBITRATION FILINGS, AND JURY TRIAL WAIVER THAT AFFECT YOUR RIGHTS.[17]

All agreements have a severability provision:

> IF THIS SPECIFIC PARAGRAPH IS FOUND TO BE UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION PROVISION (EXCEPT FOR THE JURY TRIAL WAIVER AND THE INFORMAL DISPUTE RESOLUTION PROCESS) SHALL BE NULL AND VOID. THIS PARAGRAPH IS AN ESSENTIAL PART OF THIS ARBITRATION AGREEMENT.[18]

Other than a carveout for disputes in small-claims court, all agreements have a delegation provision:

> Any Dispute (that is not resolved informally by [the dating platform's] Customer Service or as provided under subsection 15a above) shall be exclusively resolved through BINDING INDIVIDUAL ARBITRATION except as specifically provided otherwise in this Dispute Resolution Section.[19]
>
> . . .
>
> All other issues (except as otherwise provided herein) are exclusively for the Arbitrator to decide, including but not limited to scope and enforceability of this Dispute Resolution Section and including questions of arbitrability, any request to proceed in small claims court that is made after an arbitrator has been appointed,

---

[17] 2024 Terms of Use (TOU), Ex. A-3 to Flashman Decl. – ECF No. 30-4 at 3 (§ 1); 2024 TOU, Ex. B-2 to Greenspan Decl. – ECF No. 30-25 at 3 (§ 1) (cutting off the phrase "ACTION WAIVER, ADDITIONAL PROCEDURES FOR MASS ARBITRATION FILINGS, AND JURY TRIAL WAIVER THAT AFFECT YOUR RIGHTS"); 2024 TOU, Ex. C-5 to Krosnjar Decl. – ECF No. 30-47 at 3 (§ 1). While the dating platforms' arbitration agreements use nearly identical language, the exhibits containing the Hinge terms of use appear to cut off or omit material at the end of pages. *See* Exs. B-1–B-2 – ECF Nos. 30-24–30-25. The agreements from 2022 through 2024 were submitted and are all substantially the same. *See* Mot. – ECF No. 30 at 10–12 (synopsizing the TOUs in the exhibits).

[18] 2024 TOU, Ex. A-3 to Flashman Decl. – ECF No. 30-4 at 27 (§ 15b); 2024 TOU, Ex. B-2 to Greenspan Decl. – ECF No. 30-25 at 33 (§ 15b); 2024 TOU, Ex. C-5 to Krosnjar Decl. – ECF No. 30-47 at 25 (§ 15b).

[19] 2024 TOU, Ex. A-3 to Flashman Decl. – ECF No. 30-4 at 28 (§ 15c); 2024 TOU, Ex. B-2 to Greenspan Decl. – ECF No. 30-25 at 33 (§ 15c); 2024 TOU, Ex. C-5 to Krosnjar Decl. – ECF No. 30-47 at 26 (§ 15c).

and any dispute as to whether either Party is in breach or default of the Dispute Resolution Section or has explicitly or implicitly waived the right to arbitrate.[20]

The 2022 agreements warns in all caps that the parties "WAIVE THE RIGHT TO A JURY TRIAL AND THE RIGHT TO LITIGATE DISPUTES IN COURT IN FAVOR OF INDIVIDUAL ARBITRATION" and "EACH WAIVE THE RIGHT TO FILE OR PARTICPATE IN A CLASS ACTION AGAINST THE OTHER OR OTHERWISE SEEK RELIEF ON A CLASS BASIS."[21] The 2024 versions also warn in bold and in all caps that "EACH WAIVE THE RIGHT TO A JURY TRIAL AND THE RIGHT TO LITIGATE DISPUTES IN COURT" and "EACH WAIVE THE RIGHT TO FILE OR PARTICIPATE IN A CLASS ACTION AGAINST THE OTHER OR OTHERWISE TO SEEK RELIEF ON A CLASS BASIS." Each agreement applies to all disputes with the platforms' affiliates.[22]

## 2. Procedural History

The plaintiffs filed a complaint, Match moved to compel arbitration, the plaintiffs amended the complaint, and Match moved again to compel arbitration.[23] The court has subject-matter jurisdiction under the Class Action Fairness Act. 28 U.S.C § 1332(d). The parties consented to magistrate-judge jurisdiction.[24] *Id.* § 636(c). The court held a hearing on December 5, 2024.

## ANALYSIS

Under the Federal Arbitration Act (FAA), "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer and White Sales,*

---

[20] 2024 TOU, Ex. A-3 to Flashman Decl. – ECF No. 30-4 at 28 (§ 15c); 2024 TOU, Ex. B-2 to Greenspan Decl. – ECF No. 30-25 at 34 (§ 15c); 2024 TOU, Ex. C-5 to Krosnjar Decl. – ECF No. 30-47 at 26 (§ 15c).

[21] 2022 TOU, Ex. A-1 to Flashman Decl. – ECF No. 30-2 at 21–22 (§ 15b); 2022 TOU, Ex. B-1 to Greenspan Decl. – ECF No. 30-24 at 34 (§ 15b).

[22] 2024 TOU, Ex. A-3 to Flashman Decl. – ECF No. 30-4 at 25–27 (§§ 15a–15b); 2024 TOU, Ex. B-2 to Greenspan Decl. – ECF No. 30-25 at 32–33 (§§ 15a–15b)); 2024 TOU, Ex. C-5 to Krosnjar Decl. – ECF No. 30-47 at 23–25 (§§ 15a–15b).

[23] Compl. – ECF No. 1; Mot. – ECF No. 20; FAC – ECF No. 29; Mot. – ECF No. 30.

[24] Consents – ECF Nos. 7, 19.

*Inc.*, 586 U.S. 63, 67 (2019) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). The parties dispute two issues: (1) whether arbitrability was delegated to the arbitrator and (2) whether the arbitration provisions are unenforceable.[25] The plaintiff's main argument is that the delegation clause is unenforceable because the class-action waiver is unenforceable, which means that under the severability provision, the entire arbitration agreement is void.[26] This sidesteps the enforceable delegation provision: the dispute is delegated to the arbitrator. The court compels arbitration.

Under the FAA, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," "so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein*, 586 U.S. at 67–69 (cleaned up); *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643, 654 (2022) ("[I]t is presumed the judge will decide arbitrability, unless there is clear and unmistakable evidence the parties intended the arbitrator to decide arbitrability."). "[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein*, 586 U.S. at 69 (citing 9 U.S.C. § 2). "But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*

The arbitration agreements have the delegation provision set forth in the Statement. The clause provides that arbitration is the mechanism to resolve all disputes, including the interpretation and enforceability of the agreement. The plaintiffs do not attack the delegation provision directly: instead they contend that the arbitration agreement is void primarily because (1) they seek injunctive relief, (2) an arbitration clause waiving that right is invalid under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 952 (2017) (holding that any contract waiving the right to seek public injunctive relief in all forums under California's Unfair Competition Law or Consumer Legal Remedies Act is void and unenforceable in California), and (3) the court retains jurisdiction over those claims, even if it determines that the arbitration agreement is otherwise enforceable.[27]

---

[25] Opp'n – ECF No. 36 (does not argue that the plaintiffs did not contest that they agreed to the TOU).
[26] *Id.* at 6–7, 12–15.
[27] *Id.* at 12–15.

United States District Court
Northern District of California

1    If the parties agreed to delegate questions of arbitrability to the arbitrator, then the only question

2    for a court "is whether the particular agreement *to delegate* arbitrability . . . is itself unconscionable."

3    *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) (citing *Rent-A-Ctr.*, 561 U.S. at 63).

4    Arguments that the arbitration provisions as a whole are unconscionable or otherwise unenforceable

5    are for the arbitrator, not the court, to decide. *Cf. id.* at 1133 ("[S]ince [plaintiff] failed to 'make any

6    arguments specific to the delegation provision' and instead argue[s] 'that the Arbitration Clause *as a*

7    *whole* is unconscionable under state law,' 'we need not consider that claim,' because it is for the

8    arbitrator to decide in light of the parties' 'clear and unmistakable' delegation of that question, as we

9    held above." (cleaned up) (quoting *Rent-a-Ctr.*, 561 U.S. at 73–75)).

10   This should end the inquiry: the plaintiffs do not "challenge[] the delegation provision

11   specifically," and thus the court must "enforce it . . . , leaving any challenge to the validity of the

12   Agreement as a whole to the Arbitrator." *Rent-a-Ctr.*, 561 U.S. at 72; *see Nielsen Contracting,*

13   *Inc. v. Applied Underwriters, Inc.*, 22 Cal. App. 5th 1096, 1110 (2018) (the plaintiff's

14   unconscionability challenge to the delegation clause is for the court to decide even if he makes the

15   same challenge to the whole arbitration provision).

16   Applying the plaintiffs' unconscionability argument only to the delegation clause does not

17   change this outcome.

18   The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist

19   at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[G]enerally applicable

20   contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate

21   arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517

22   U.S. 681, 687 (1996). "Under California law, 'the party opposing arbitration bears the burden of

23   proving any defense, such as unconscionability.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251,

24   1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55

25   Cal. 4th 223, 236 (2012)).

26   In California, contractual unconscionability has procedural and substantive components.

27   *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "[T]he former

28   focus[es] on oppression or surprise due to unequal bargaining power, the latter on overly harsh or

1   one-sided results." *Id.* (cleaned up). "Procedural and substantive unconscionability 'need not be

2   present in the same degree.'" *Poublon*, 846 F.3d at 1260 (quoting *Sanchez v. Valencia Holding Co.*,

3   61 Cal. 4th 899, 910 (2015)). "Rather, there is a sliding scale: 'the more substantively oppressive the

4   contract term, the less evidence of procedural unconscionability is required to come to the conclusion

5   that the term is unenforceable, and vice versa.'" *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910).

6        The plaintiffs contend that the arbitration provisions are procedurally unconscionable because the

7   apps are designed to cause addictive behavior: users seek validation and the pursuit of romantic

8   connection, which heightens emotional dependence and exploits the users' emotional vulnerability.

9   They allegedly are adhesion contracts, even with their opt-out provisions (which are murky and

10  require "a single outdated method — mail"), because Match has the unilateral right to modify the

11  terms of service. They do not require the plaintiffs to click through to the terms of service, which

12  means users are not meaningfully advised of their rights.[28] They are substantively unconscionable

13  because their terms are one-sided and favor Match, and the opt-out process is burdensome.[29]

14       Procedural unconscionability focuses on the circumstances surrounding the negotiation of the

15  contract. *Gatton v. T–Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007). "Oppression arises

16  from an inequality of bargaining power which results in no real negotiation and an absence of

17  meaningful choice." *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288 (2008) (cleaned up). "Surprise

18  involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a

19  prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (cleaned up).

20       The plaintiffs cite no case to support the conclusion that psychological dependence renders a

21  users' agreement to terms of service on an app procedurally unconscionable. In nonessential

22  recreational activity like using a social app, the user has the option of foregoing the activity. *Adkins v.*

23  *Facebook, Inc.*, No. C 19-00117 WHA, 2019 WL 3767455, at *2 (N.D. Cal. Aug. 9, 2019) (quoting

24  *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245 (2007)); *Flores-Mendez v.*

25  *Zoosk, Inc.*, No. C 20-04929 WHA, 2022 WL 2967237, at *2 (N.D. Cal. July 27, 2022) (dating

26

27  ───────────────

    [28] *Id.* at 16–20.

28  [29] *Id.* at 20–22.

*United States District Court*
*Northern District of California*

service is non-essential activity). Adhesion contracts like these have "a low degree of procedural unconscionability at most." *Poublon*, 845 F.3d at 1261–62. The arbitration clause here was noted in the first section of the terms of service, bolded and in caps. *Cf. Stanfield v. Tawkify, Inc.*, 517 F. Supp. 3d 1002, 1006 (N.D. Cal. 2021) (the matchmaking service had superior bargaining strength, the arbitration clause was hidden on the last page under a section called "Governing Law," and there were no links labeled "Arbitration," which meant that the "arbitration provision was a needle in a haystack").

As Match points out, the terms of service are not illusory: the terms provided that the plaintiffs had to affirmatively accept the revised terms of service and could opt out of retroactive application of the changes. The platforms provided notice and required users to accept changes via the pop-up blocking modal. The terms also provide an email address for the opt-out notice (not mail, as the plaintiffs contend).[30] This makes the case different than *Marron v. HealthSource Global Staffing, Inc.*, where the court held that the opt-out was illusory because the arbitration agreement did not identify who to notify. 19-cv-01534-KAW, 2019 WL 4384287, at *8, *11 (N.D. Cal. Sept. 3, 2019) (nonetheless enforcing the arbitration agreement because it was not substantively unconscionable).[31] It is different than *Rivera v. Uniqlo California, LLC.*, which involved an employment contract where the plaintiff had three minutes to review the agreement and was not given a copy. CV17-02848 JAK (JPRx), 2017 WL 6539016, at *7–8 (C.D. Cal. Sept. 8, 2017).[32] Courts have rejected unconscionability challenges to more onerous opt-out provisions. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210–11 (9th Cir. 2016) (rejecting argument that the opt-out process — requiring driver to opt out in person at Uber's San Francisco's offices or by overnight delivery service — was illusory and procedurally unconscionable); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199–2000 (9th Cir. 2002) (rejecting argument that the plaintiff "was not given a meaningful opportunity to opt out" because he "did not have the degree of sophistication necessary to recognize the meaning of the opt-

---

[30] *See, e.g.*, 2022 TOS, Ex. A-1 to Flashman Decl. – ECF No. 30-2 at 31 (§ 15e).

[31] Opp'n – ECF No. 36 at 19 (citing *Marron*).

[32] *Id.* (citing *Rivera*).

1     out provision or to know how to avoid it, and because 30 days was too short a period in which to

2     make a decision" and mail in the opt-in form).

3        Turning to substantive unconscionability, the arbitration arguments are not substantively

4     unconscionable merely because they have a class-action waiver and opt-out provisions. The opt-

5     out issue is about procedural unconscionability and is addressed above: the plaintiffs cite no cases

6     holding an opt-out clause is substantively unconscionable. *Concepcion* controls regarding the

7     class-action waiver: California's *Discover Bank* rule — holding that a class-action waiver was

8     unconscionable, *Discover Bank v. Super. Ct.*, 36 Cal. 4th 148, 162–63 (2005) — is preempted by

9     the FAA. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011).

10       In sum, the plaintiffs' arguments about unconscionability do not discernably address why the

11     particular agreement to delegate arbitrability is "itself unconscionable." *Brennan*, 796 F.3d at

12     1132. Even assuming their arguments generally about unconscionability address the issue of why

13     delegation agreement is itself unconscionable, the delegation agreement is not unconscionable

14     (and, even if the court reached the issue), the arbitration agreement is not unconscionable either.

15       In sum, the parties delegated questions of arbitrability to the arbitrator.

16       The plaintiffs' contention — that the arbitration agreement is void because an arbitration

17     clause waiving their right to seek injunctive relief is invalid under *McGill*, 2 Cal. 5th at 955 —

18     thus is for the arbitrator. *Wilson v. Wells Fargo & Co.*, No. 20-cv-2307-DMS-WVG, 2021 WL

19     1853587, at *4 (S.D. Cal. May 10, 2021) ("Where, as here, the parties have delegated arbitrability

20     to the arbitrator, the application of *McGill* is a question for the arbitrator, not the Court, to

21     decide."); *Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1176–77 (N.D. Cal. 2021)

22     ("[T]he application of the '*McGill* rule' is a gateway issue that may be delegated to the

23     arbitrator.") (collecting cases).

24

25

26

27

28

*United States District Court*
*Northern District of California*

**CONCLUSION**

The court grants the motion to compel arbitration and stays the case pending arbitration. *Smith v. Spizziri*¸ 601 U.S. 472, 474, 476–78 (2024) (per curiam) (requiring stay).

This disposes of ECF No. 30.

**IT IS SO ORDERED.**

Dated: December 10, 2024

_____

LAUREL BEELER
United States Magistrate Judge